IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

ENELSIDO GUANTE,                        )
                                        )
                Petitioner,             )
                                        )
        v.                              )        CV 305-92
                                        )
MICHAEL PUGH, Warden, McRae            )
Correctional Facility,                  )
                                        )
                Respondent.             )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Petitioner Enelsido Guante, an inmate incarcerated at McRae Correctional Facility in McRae, Georgia, has filed a petition for writ of habeas corpus under Title 28, United States Code, Section 2241. For the reasons that follow, the Court **REPORTS** and **RECOMMENDS** that the petition be **GRANTED IN PART,** that the length of petitioner's sentence be reduced by forty-seven (47) days, and that a final judgment be **ENTERED** in favor of petitioner.

## I. BACKGROUND

Petitioner was arrested on May 16, 2000, on state drug possession charges in New York City. Presentence Investigation Report ("PSI") at 4.[1] The Immigration and

---

[1]References to the PSI are to a PSI filed in <u>United States v. Guante</u>, 3:CR-01-145 (M.D. Penn. 2001), wherein petitioner was convicted of illegal re-entry after deportation.

Naturalization Service, now known as the Bureau of Immigration and Customs Enforcement ("ICE"), subsequently took custody of petitioner and instituted deportation proceedings. Id. In the interim, petitioner was convicted on drug possession charges and sentenced to six months in prison. Id. Petitioner finished serving his state sentence on February 6, 2001, and was transferred to ICE custody. Id. ICE scheduled his deportation for March 8, 2001. Id.

On February 28, 2001, while conducting a routine file review, ICE agents became aware that petitioner had been convicted previously of an aggravated felony and deported under an alias. Id. Petitioner subsequently admitted in a March 8, 2001, interview with ICE agents that he had been deported previously after a conviction for an aggravated felony. Id. ICE canceled his scheduled March 8 deportation and held him pending prosecution for illegal re-entry in the Middle District of Pennsylvania. A grand jury sitting in that district returned an indictment on the re-entry charge on April 24, 2001. Id. at 3. Petitioner subsequently pleaded guilty to re-entry on September 24, 2001, and was sentenced to seventy months in prison. Gov. Ex. 2.

After an administrative review of petitioner's sentence, the Bureau of Prisons ("BOP") determined that its initial sentence computation had not given petitioner sufficient credit for time served prior to his judgment and commitment order. The BOP initially gave petitioner credit for time served starting on May 4, 2001. His release date was adjusted to allow credit for time served between April 24, 2001, the date of his indictment, and May 4. Gov. Ex. 3.

---

The government submitted the PSI under seal. Doc. 15.

Petitioner asserts that he should receive credit for all the time he served in ICE custody pending deportation after his state sentence and prior to his indictment for re-entry, time during which he was not serving a sentence or being held under a pending federal charge. Petitioner alternatively argues that he should receive credit for time served between March 8, 2001, his scheduled deportation date, and April 24, 2001, the date of his indictment.

## II. DISCUSSION

Petitioner's first claim, that he should receive credit for time served in ICE custody between the date of completion of his state sentence and the date of his federal indictment, is foreclosed by the civil nature of administrative custody. Title 18, United States Code, Section 3585 provides guidelines for calculation of a prison sentence:

> (a) Commencement of sentence.--A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
>
> (b) Credit for prior custody.--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences–
>
> (1) as a result of the offense for which the sentence was imposed; or
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

3

The BOP has issued Program Statement 5880.28 of the <u>Sentence Computation Manual (CCA of 1984)</u>, which implements the congressional mandate of Section 3585(b).[2] According to Program Statement 5880.28:

> Official detention does not include time spent in the custody of the U.S. Immigration and Naturalization Service (INS) under the provisions of 8 U.S.C. § 1252 pending a final determination of deportability.  An inmate being held by <u>INS pending a civil deportation determination is not being held in "official detention" pending criminal charges.</u>

Program Statement 5880.28 (emphasis in original).  The Program Statement cites several cases for the proposition that detention pending a deportation determination is civil in nature and is not "official detention" for purposes of Section 3585.  See <u>Ramirez-Osorio v. INS</u>, 745 F. 2d 937, 944 (5th Cir. 1984) ("A deportation proceeding is a civil, not criminal, action." (citing <u>INS v. Lopez-Mendoza</u>, 468 U.S. 1032, 1042-43 (1984)); <u>Cabral-Avila v. INS</u>, 589 F.2d 957, 959 (9th Cir. 1978) ("The deportation proceeding, despite the severe consequences, has consistently been classified as a civil, rather than a criminal matter.").  The Court also is aware of decisions of precedential value in the Eleventh Circuit holding that deportation proceedings are civil, not criminal, in nature.  <u>United States v. Noel</u>, 231 F.3d 833, 837 (11th Cir. 2000) (<i>per curiam</i>); <u>Barthold v. United States INS</u>, 517 F.2d 689, 691 (5th Cir. 1975)[3]; <u>see also</u> <u>Reno v. Koray</u>, 515 U.S. 50, 61 (1995) ("[C]redit for time spent in 'official detention' under § 3585(b) is available only to those defendant who were detained in a 'penal

---

[2]Program Statements, the BOP's internal agency guidelines, are entitled to deference from the courts.  <u>Reno v. Koray</u>, 515 U.S. 50, 61 (1995).

[3] In <u>Bonner v. Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions that were handed down prior to the close of business on September 30, 1981.

4

or correctional facility,' § 3621(b), *and who were subject to BOP's control.*"[4] (emphasis added)). This Court reached the same conclusion in Fletcher v. Pugh, CV303-082 (S.D. Ga. Apr. 27, 2004). There, the Court denied the petitioner's request for time served in ICE custody because of the civil nature of such custody.

In this case, ICE held petitioner pending deportation, which was scheduled for March 8, 2001. Petitioner's custody prior to March 8 was due to pending administrative deportation proceedings and does not constitute "official detention" under Section 3585(b). Accordingly, the BOP properly excluded that time in calculating petitioner's time served.

Petitioner's custody after his scheduled deportation date of March 8, 2001, however, was prompted by ICE's discovery of his prior deportation and the potentiality of further criminal prosecution. The government concedes in its Supplemental Response to the Court's Order that petitioner "was being held during the period of March 8, 2001, until April 24, 2001, pending criminal prosecution in the Middle District of Pennsylvania for illegal re-entry following deportation." Doc.13 at 4. As such, ICE was no longer holding him pending a civil deportation proceeding and Program Statement 5880.28 does not apply.

Yet the fact that petitioner was no longer in confinement pending a civil proceeding, standing alone, does not render his confinement an "official detention" under Section 3585(b). In Koray, the Supreme Court held that a court-ordered stay in a community treatment center, a stay ordered as a condition of pretrial release in a criminal proceeding, should not be credited as official detention time. Koray, 515 U.S. at 65. The Court was persuaded by the fact that the district court issued the order as terms of pretrial release, not

---

[4]Prisoners awaiting deportation by ICE are subject to the control of ICE, not the BOP.

as a detention order. Id. at 57. The Eleventh Circuit has extended Koray to deny credit for home confinement ordered as a condition of pretrial release. Rodriguez v. Lamer, 60 F.3d 745, 748 (11th Cir. 1995).

Unlike the defendants in Koray and Rodriguez, petitioner here was not being held pursuant to court order or any pending criminal charge between March 8 and April 24. The Court is not aware of any decision addressing whether pretrial confinement in ICE custody pending criminal prosecution constitutes official detention under Section 3585(b). The Court is aware, as the government should be, that a person in custody pending criminal prosecution should be brought before a magistrate judge "without unnecessary delay," Fed. R. Crim. P. 5(a)(1)(A), pursuant to a properly filed complaint. The magistrate judge may then schedule a detention hearing, at which time the court would determine whether pretrial detention is appropriate. If the court determines that detention is appropriate, as would likely be the case where the charge is for illegal re-entry and the defendant is an illegal alien, then the court would order the defendant detained and his time in custody would count against his sentence as "official detention."

In this case, instead of filing a criminal complaint and taking petitioner before a magistrate judge on March 8, the time when ICE cancelled his deportation and determined that a criminal prosecution would follow, ICE kept petitioner in administrative custody until his arraignment. Without addressing whether the administrative custody between March 8 and April 24 was constitutionally permissible, the Court finds that petitioner should not be penalized for the government's decision not to bring him before a magistrate judge for initial appearance when his detention was pending criminal prosecution. Accordingly, petitioner

6

is entitled to have his sentence reduced by forty-seven (47) days, the amount of time he was in custody between March 8, 2001, and April 24, 2001.

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the petition be **GRANTED IN PART,** that the BOP be **DIRECTED** to reduce petitioner's sentence by forty-seven (47) days, and that a final judgment be **ENTERED** in favor of petitioner.

SO REPORTED and RECOMMENDED this _2nd_ day of _December_ 2005, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE